IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON WILLIAM HARVEY,<br><br>    Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, NDCS; RANDY KOHL, Dr., Medical Director; and JULIE A. PEW, APRN;<br><br>    Defendants. | 8:15CV102<br><br><br>**MEMORANDUM AND ORDER** |

    This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 49.) For the reasons that follow, the Motion is granted.

### I. BACKGROUND

    Plaintiff Jason William Harvey ("Harvey") filed this case on March 15, 2015. The operative pleading is Harvey's Amended Complaint[1] which alleges that Defendants,[2] Dr. Randy Kohl ("Kohl"), the former medical director of the

---

    [1] The court will consider the documents attached to Harvey's original Complaint (Filing No. 1 at CM/ECF pp.3–11) as being incorporated into Harvey's Amended Complaint (Filing No. 10) by reference as that is clearly Harvey's intention. *See* Fed. R. Civ. P. 10(c) (""A statement in a pleading may be adopted by reference . . . in any other pleading . . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

    [2] The Amended Complaint also names "Dr. C. Ferguson (Head Physician)" as a defendant. Ferguson was not named in the original or first amended Complaint (Filing Nos. 1, 6), and the court did not address whether service of summons could proceed against Ferguson in the court's review of the Amended Complaint (Filing No. 12). Harvey did not object to the court's omission of Ferguson as a defendant and service was never attempted or completed on Ferguson. (*See* Docket Sheet.) Accordingly, any potential claims against Ferguson are dismissed for lack of service. *See* Fed. R. Civ. P. 4 (service must be accomplished within 120 days after the complaint is filed).

Nebraska Department of Correctional Services ("NDCS"), and Julie Pew ("Pew"), a former nurse at the Nebraska State Penitentiary, were deliberately indifferent to Harvey's serious medical needs in violation of his constitutional rights under the Eighth Amendment. (Filing No. 10.) Harvey claims that Kohl and Pew were aware that Harvey had inactive tuberculosis, liver disease, diabetes, and Hepatitis C, but denied him the Hepatitis C treatment recommended for Harvey by Dr. Steven Rademacher, an "infectious disease specialist" for NDCS. (*Id.* at CM/ECF pp.1–2.) Harvey seeks an injunction against Defendants in their official capacities to stop the Eighth Amendment violations and provide Harvey with the medication Harvoni to treat his Hepatitis C and $10,000,000 in damages from Defendants in their individual capacities. (*Id.* at CM/ECF pp.2–3.)

Defendants filed this Motion for Summary Judgment as well as an Index of Evidence and Brief in Support on August 16, 2017. (Filing Nos. 49, 50, 51.) Harvey has not filed a brief in opposition or taken any action in this case since Defendants' Motion was filed.

## II. RELEVANT UNDISPUTED FACTS[3]

---

[3] Apart from the copies of Inmate Interview Requests and Grievances attached to Harvey's original Complaint (Filing No. 1 at CM/ECF pp.3–11), Harvey has not submitted any other evidence to support his allegations. Harvey was required to respond to Defendants' Motion with specific factual support for his claims to avoid summary judgment. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). *See also*, *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Harvey's status as a pro se litigant does not excuse him from properly responding to Defendants' Motion. *See Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).

Defendants submitted a statement of material facts in accordance with the court's Local Rules. *See* NECivR 56.1. They also submitted evidence which was properly authenticated by affidavits. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the material facts set forth by Defendants

1. Harvey was, at all times relevant to this action, an inmate at the Nebraska State Penitentiary. (Filing No. 10; Filing No. 47.)

2. Defendant Dr. Randy Kohl was, at all times relevant to this case, the Medical Director for NDCS. (Filing No. 10; Filing No. 47.)

3. Defendant Julie Pew was, at all times relevant to this case, a nurse at the Nebraska State Penitentiary. (Filing No. 10.)

4. Harvey began his incarceration with NDCS on June 6, 2014. (Filing No. 51-1.)

5. On June 18, 2014, Harvey had a medical examination in which he was diagnosed with liver disease (more specifically Hepatitis C) and type II diabetes, and had a positive purified protein derivative (PPD) skin test indicating a latent tuberculosis infection. (*Id*.)

6. Harvey told medical staff at NDCS that he had used illicit intravenous drugs in 2004 and 2012. (*Id*.)

7. At the June 18, 2014 physical examination, Harvey refused vaccination for Hepatitis A and B. (*Id*.)

8. Harvey was provided insulin upon admission to NDCS in order to treat his type II diabetes. His blood sugar levels were also monitored regularly. (*Id*.)

9. Following the PPD test that indicated a latent tuberculosis infection, Harvey was prescribed INH pills. The pills, however, caused Harvey to suffer from a low platelet count. To maintain Harvey's health, the INH pills were

---

in their Brief (Filing No. 50) are deemed admitted and are adopted with proper citations to the record.

discontinued, and Harvey was screened for active tuberculosis via chest x-rays instead. At no time did Harvey have an active tuberculosis infection. (*Id*.)

10. NDCS medical protocol states that inmates entering NDCS for periods shorter than one year or who have less than one year remaining on their sentence (measured by "tentative release date") ordinarily should not be started on antiviral therapy. Individuals entering NDCS custody who are already on treatment should be maintained on antiviral therapy unless treatment must be discontinued for medical reasons. (*Id*.)

11. Contra-indications for treatment of Hepatitis C include, but are not limited to, documented use of illicit drugs or abuse of alcohol in the preceding 12 months and documented high-risk behavior in preceding 12 months (may include sexual, drug abuse, body piercing, tattooing, etc.). This is because the treatment will not be effective if there is a possibility of becoming re-infected with the virus. (*Id*.)

12. Inmates must wait one year to begin Hepatitis C treatment to ensure they are not using illicit drugs or abusing alcohol, which would render the treatment worthless. (*Id*.)

13. Hepatitis C is a chronic illness that progresses slowly, if at all. The progression generally takes 20 to 30 years before any serious problems are encountered. (*Id*.)

14. In December of 2015, Harvey began treatment for Hepatitis C by taking a medication called Harvoni. The treatment lasted for 12 weeks which Harvey successfully completed and was cured of Hepatitis C. (*Id*.)

15. Harvey did not suffer any ill effects from delaying treatment of his Hepatitis C for one year. A delay of one year of the treatment of Hepatitis C

would not result in a deterioration of his health, extreme pain, or numbness in his left hand. (*Id*.)

16. Dr. Deol, the current Medical Director for NDCS, is familiar with the standard of care governing primary care in Nebraska. (*Id*.)

17. After Dr. Deol reviewed the medical records, based on his experience and training in the field of primary care, his opinion was that the care provided by the medical staff at the Nebraska State Penitentiary was, at all times, in compliance with the generally recognized standards of care, skill, and knowledge as used in Lincoln, Lancaster County, Nebraska, or similar communities by medical practitioners and providers in the field of primary care who attend to patients under circumstances the same as or similar to the present case. (*Id*.)

### III. ANALYSIS

Defendants argue they are entitled to summary judgment because Harvey's request for an injunction is now moot, as he has completed treatment for Hepatitis C; no violation of Harvey's constitutional rights occurred; and Defendants are protected by qualified immunity.

**A. Standard of Review**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652–53 (8th Cir. 1997).

5

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B. Request for Injunction

Harvey seeks an injunction against Defendants in their official capacities requiring them to provide him with the medication Harvoni to treat his Hepatitis C. (Filing No. 10 at CM/ECF p.2.) The undisputed evidence establishes that Harvey was prescribed Harvoni in December 2015, successfully completed the treatment, and was cured of Hepatitis C. (Filing No. 51-1.) As Harvey no longer requires treatment for Hepatitis C, his request for prospective injunctive relief is moot. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (stating injunctive relief "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again").

### C. Eighth Amendment Violation and Qualified Immunity

Defendants next argue that they are entitled to summary judgment because no violation of Harvey's constitutional rights occurred and they are immune from suit in their individual capacities under the doctrine of qualified immunity. Because the qualified immunity analysis encompasses the question of whether a constitutional violation has been demonstrated, the court will address these arguments together.

"Qualified immunity shields government officials from liability for civil damages and the burdens of litigation 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McKenney v. Harrison*, 635 F.3d 354, 358 (8th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotation and citation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.*

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). If no reasonable fact-finder could answer yes to both of these questions, the official is entitled to qualified immunity. *Id.* Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007) (citation omitted).

To prevail on an Eighth Amendment claim, Harvey must prove that the defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and a subjective component. Harvey must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded, those needs. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). "A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need." *Id.* For a claim of deliberate indifference, the

7

prisoner must show "'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008).

A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

> "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)).

In the present case, it is not contested that Harvey suffered from objectively serious medical needs as he had been diagnosed with inactive tuberculosis, type II diabetes, and Hepatitis C. Rather, the subjective prong of the deliberate indifference standard is at issue, and the court finds that Harvey has failed to show that either Kohl or Pew were aware of Harvey's serious medical need and deliberately disregarded it. On the contrary, the evidence in the record demonstrates that, following Harvey's diagnoses at intake, medical staff at NDCS gave him insulin and monitored his type II diabetes; began him on INH pills for the latent tuberculosis infection and later monitored the infection with chest x-rays; and, when he qualified, treated and cured his Hepatitis C infection. (Filing No. 51-

1.) While Harvey alleged that the delay in his Hepatitis C treatment would lead to further deterioration of his health, the record establishes that Harvey did not suffer any ill effects from the delay nor did it result in a deterioration of his health, extreme pain, or numbness in his left hand. (*Id*.) The undisputed evidence establishes that Harvey received proper medical care for all his conditions and fails to show that Defendants were deliberately indifferent to any serious medical need.

Accordingly, the court finds that Harvey's deliberate indifference claim against each Defendant fails as a matter of law.

> [I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim.

*Ambrose v. Young*, 474 F.3d 1070, 1077 n.3. (8th Cir. 2007) (citations omitted). Alternatively, because there was no constitutional violation, each Defendant is entitled to qualified immunity. *See Payne v. Britten*, 749 F.3d 697, 707 (8th Cir. 2014) ("For example, a district court could begin and end with the first question, granting qualified immunity because there was no constitutional violation.").

### D.  State Law Claims

Liberally construed, Harvey's Amended Complaint raises medical-negligence claims under state law. The court, however, declines to exercise supplemental jurisdiction over any remaining state law claims because it will dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment ([Filing No. 49](Filing No. 49)) is granted.

2. All claims alleged against Defendants Kohl and Pew in their official and individual capacities and over which the court has original jurisdiction are dismissed with prejudice.

3. The court will enter judgment by separate document.

Dated this 1st day of December, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge